IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SAWSAN ABDUL RAHIM                      :

                                        :

    v.                                  : Civil Action No. DKC 2006-0420

                                        :

RICHARD CATERISANO, ET AL               :

                                        :

### MEMORANDUM OPINION

Presently pending and ready for resolution in this naturalization action is the motion of Defendants Richard Caterisano, District Director of the Baltimore District Office of the United States Citizenship and Immigration Services ("CIS"), Emilio T. Gonzalez, Director of CIS, and Michael Chertoff, Secretary of the United States Department of Homeland Security, to dismiss, or for summary judgment. (Paper 5). The issues have been briefed, no hearing deemed necessary, and the court now rules pursuant to Local Rule 105.6.[1] For the reasons that follow, Defendant's motion to dismiss will be granted.

## I. Background

The following facts are undisputed. Plaintiff Sawsan Abdul Rahim filed an application for naturalization at CIS's Vermont Service Center on January 18, 2005. On June 14, 2005, Plaintiff appeared at the CIS District Office in Baltimore, Maryland, for her

---

[1] Defendants filed the motion to dismiss and Plaintiff filed an opposition to that motion. Because the court will dismiss the complaint as moot, it need not wait for Defendants to file a reply.

naturalization interview.  On February 17, 2006, Plaintiff filed a complaint in this court, pursuant to 8 U.S.C. § 1447(b), because more than 120 days had passed and Plaintiff still had not received a decision from CIS on her naturalization application.  In her complaint, Plaintiff asks this court to assume jurisdiction over her pending application for naturalization, approve the application, and grant her other relief as the court deems appropriate.[2]  (Paper 1).

On February 28, 2006, while Plaintiff's complaint was pending, CIS denied Plaintiff's naturalization application because of a lack of good moral character.  On or about March 28, 2006, Plaintiff appealed this denial and sought a hearing on her application before a senior immigration officer.  On May 12, 2006, Defendants filed a motion to dismiss, or for summary judgment, pursuant to Fed.R.Civ.P. 12(b)(1) and 56.  (Paper 5).

## II.  Standard of Review

At the time Plaintiff filed her complaint, CIS had not adjudicated her application and the relief requested in this court was for the court to make a determination on the application. While the case was pending, CIS did what Plaintiff sought – it adjudicated her application.  The question then naturally arises as

---

[2] To the extent that Plaintiff is suggesting that the court has to approve her application, she is incorrect.  As will be discussed later, the language of the statute simply provides that the district court may either "determine the matter" or remand to CIS with appropriate instructions.  8 U.S.C. § 1447(b).

to how, if at all, the adjudication by CIS affects the nature of this proceeding and the jurisdiction of the court.

Although Defendants move to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), or for summary judgment, Rule 12(b)(1) provides the proper basis upon which to dispose of Plaintiff's claim.  *See Etape v. Chertoff*, __ F.Supp.2d __, 2006 WL 2355079 (D.Md. Aug. 15, 2006); *Kia v. U.S. Immigration & Naturalization Serv.*, 175 F.3d 1014, No. 98-2399, 1999 WL 172818, at *1 (4th Cir. Mar. 30, 1999) (unpublished table decision); *Sze v. Immigration and Naturalization Serv.*, 153 F.3d 1005, 1008, 1010 (9th Cir. 1998); *Farah v. Gonzales*, No. 05-1944, 2006 WL 1116526, at *1-2 (D.Minn. Apr. 26, 2006).

Motions to dismiss for lack of subject matter jurisdiction are governed by Fed.R.Civ.P. 12(b)(1).  The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court.  *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).  In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647.  The court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Richmond*, 945 F.2d at 768.

**III.  Analysis**

Defendants argue that CIS's denial of Plaintiff's naturalization application moots the case and deprives this court of jurisdiction pursuant to 8 U.S.C. § 1447(b).  Moreover, Defendants assert that although Plaintiff is eligible to pursue an administrative appeal from the denial and did so, the administrative process has just commenced and Plaintiff cannot yet seek judicial review of her application pursuant to 8 U.S.C. § 1421.  (Paper 5, at 2).

Plaintiff contends that her claim is not moot because, once she filed the complaint in this court, the court had exclusive jurisdiction to determine the naturalization application pursuant to § 1447(b).  Accordingly, she argues that CIS was without jurisdiction to deny the naturalization application and the February 28, 2006, denial is void.  Plaintiff relies on the language in 8 U.S.C. § 1447(b), as well the decision in *United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004) (en banc) to support her argument.[3]  (Paper 12, at 4-16).

In the context of a naturalization proceeding, Congress has prescribed two instances in which a district court has jurisdiction.  First, 8 U.S.C. § 1447(b) allows an individual who

_____

[3] Plaintiff also relies on the decisions in *Zaranska v. U.S. Dep't of Homeland Sec.*, 400 F.Supp.2d 500, 503-04 (E.D.N.Y. 2005) and *Castracani v. Chertoff*, 377 F.Supp.2d 71, 75 (D.D.C. 2005), both of which follow the Ninth Circuit's decision in *Hovsepian*, 359 F.3d 1144.

submitted an application for naturalization to request a hearing
before a district court when CIS has delayed deciding the
application:

> If there is a failure to make a determination
> [on a naturalization application] under
> section 1446 of this title before the end of
> the 120-day period after the date on which the
> examination is conducted under such section,
> the applicant may apply to the United States
> district court for the district in which the
> applicant resides for a hearing on the matter.

The statute, in turn, provides the court with two courses of
action. The court, in its discretion, either may decide the
naturalization application or remand it to CIS for a decision:

> Such court has jurisdiction over the matter
> and may either determine the matter or remand
> the matter, with appropriate instructions, to
> the Service to determine the matter.

The second route for judicial review applies to a denial of
the naturalization application once the individual has exhausted
all administrative remedies:

> A person whose application for naturalization
> under this subchapter is denied, after a
> hearing before an immigration officer under
> section 1447(a) of this Title, may seek review
> of such denial before the United States
> district court for the district in which such
> person resides in accordance with chapter 7 of
> Title 5. Such review shall be de novo, and
> the court shall make its own findings of fact
> and conclusions of law and shall, at the
> request of the petitioner, conduct a hearing
> de novo on the application.

8 U.S.C. § 1421(c). This section limits the jurisdiction of the
district courts by mandating that the applicant first must appeal

to an immigration officer within CIS.  Only after a subsequent denial by the immigration officer can the district court review the agency's decision.  *See Kia*, 1999 WL 172818, at *1; *Aparicio v. Blakeway*, 302 F.3d 437, 446 (5th Cir. 2002); *Farah*, 2006 WL 1116526, at *2.

In a very recent decision, this court was faced with highly similar facts.  In *Etape*, __ F.Supp.2d __, 2006 WL 2355079, the plaintiff filed a complaint in this court pursuant to § 1447(b), after his naturalization application had been pending more than 120 days following his examination.  Plaintiff sought judgment on his application or a remand to CIS with instructions.  While his complaint was pending in this court, CIS denied his application for a lack of good moral character.  This court held that CIS's decision mooted the plaintiff's claim and granted the defendant's motion to dismiss.

Likewise, in *Kia v. U.S. Immigration & Naturalization Service*, the plaintiff was interviewed regarding his naturalization application but did not receive a timely decision within 120 days.  *Kia*, 1999 WL 172818, at *1.  Kia filed a complaint in the district court for declaratory relief pursuant to § 1447(b), seeking judgment on his naturalization application.  While the complaint was pending, the Immigration and Naturalization Service ("INS"), the predecessor to CIS, denied his application because he failed to satisfy the English literacy requirements.  The INS moved to

dismiss Kia's complaint as moot, and the district court granted the motion pursuant to Fed.R.Civ.P. 12(b)(1).  *Id.*   On appeal, the United States Court of Appeals for the Fourth Circuit held, albeit in an unpublished opinion, that "the plain language of § 1447[b] suggests the district court requires an unreviewed application in order to make a determination, and that the INS' denial of naturalization shortly after [the plaintiff] filed suit mooted the case and deprived the court of jurisdiction." *Id.*

Similarly, in *Farah v. Gonzales*, 2006 WL 1116526, at *2, the United States District Court for the District of Minnesota held that the plaintiff's request for the court to adjudicate his naturalization application became moot once CIS denied his request. As with Etape and Kia, Farah filed an application for naturalization, interviewed with CIS, and received no response within 120 days of his examination.  *Id.*  Farah filed a complaint with the district court pursuant to § 1447(b), requesting that the court either determine his eligibility for naturalization or remand to CIS and compel the agency to decide.  *Id.*  Approximately one month later, while the case was pending in district court, CIS denied Farah's application, and subsequently moved to dismiss his complaint.  *Id.*  The court granted the motion, holding that a decision by CIS, even after Farah had filed a complaint with the court, mooted Farah's request and therefore the court lacked subject matter jurisdiction to proceed.  *Id.* at *2.

The Ninth Circuit, however, examined similar facts and reached the opposite conclusion regarding the district court's jurisdiction in naturalization proceedings initiated pursuant to § 1447(b). *United States v. Hovsepian*, 359 F.3d at 1144.   The two plaintiffs had applied for naturalization and neither received a decision within 120 days of their examination.   The plaintiffs then filed a complaint with the district court, requesting adjudication of their applications, pursuant to § 1447(b).  Shortly thereafter, CIS denied the applications, but the district court continued to consider them and held a de novo hearing on the matter.   *Id.* at 1152.

On appeal to the Ninth Circuit, a panel initially held that the district court abused its discretion by retaining jurisdiction over the naturalization applications. *United States v. Hovsepian*, 307 F.3d 922, 933 (9th Cir. 2002) ("*Hovsepian I*").   The court reasoned that, pursuant to § 1421(c), Congress had indicated a preference for applicants to exhaust administrative remedies before seeking judicial review, and, while there exists a need for judicial review when CIS has delayed a decision for more than 120 days, once the agency has made a decision "the need for immediate judicial review evaporates." *Hovsepian I*, 307 F.3d at 932.   The court added that nothing in § 1447(b) strips CIS of jurisdiction when the 120-day period expires:

> Jurisdiction over the application does not
> automatically vest in the district court, but

> rather the court may, as a matter of
> discretion, affirmatively assert jurisdiction
> if it wishes.  It would be entirely contrary
> to § 1447(b)'s purpose of ensuring prompt
> determinations to suspend [CIS] authority
> while the district court decides whether to
> exercise jurisdiction.

*Id.* at 932-33.

On subsequent rehearing en banc, however, the Ninth Circuit disagreed and held that the district court had exclusive jurisdiction over the applications once the complaint was filed, and that any decision by CIS subsequent to the filing of the plaintiffs' complaint would not impact the court's jurisdiction. *United States v. Hovsepian*, 359 F.3d at 1164 ("*Hovsepian II*").  In *Hovsepian II*, the court based its holding on an interpretation of the text of § 1447(b), the statutory context, and Congress's policy objectives in enacting the relevant statutory sections.  359 F.3d at 1159-64.  First, the court reasoned that the text of § 1447(b) "bestows on the district court the power to pursue either of two options." *Id.* at 1160.  The court either may determine the matter itself or remand to the agency to make a determination.  According to the Ninth Circuit, through this language Congress "intended to vest power to decide languishing naturalization applications in the district court *alone*, *unless* the court chooses to remand the matter to the [CIS], with *the court's* instructions." *Id.* (emphasis in original) (internal quotation marks omitted).  Additionally, the court stated that, pursuant to the provision allowing the district

court to remand "with appropriate instructions," the court could make findings of fact and conclusions about the application and then order the agency to adopt those findings.  *Id.* at 1160-61.

The court also relied on *Brock v. Pierce County*, 476 U.S. 253 (1986).  According to the court, *Brock* "held that an agency does not lose jurisdiction unless the statute at issue requires that the agency act within a particular time period and the statute specifies a consequence for failure to comply with the time limit." *Hovsepian II*, 359 F.3d at 1161.  The Ninth Circuit stated that § 1447(b):

> requires [CIS] to make a decision regarding a naturalization application within 120 days of [CIS's] initial interview of the applicant. Further § 1447(b) specifies a consequence for failure to meet this deadline, namely that the district court gains jurisdiction over the matter (upon the applicant's request) until the district court decides the case or exercises its discretion to remand the matter to [CIS].  Under *Brock*, therefore, § 1447(b) is an effective jurisdiction-stripping statute.

*Hovsepian II*, 359 F.3d at 1161.

Additionally, the court looked to the statutory context of § 1447(b), interpreting the language in § 1447(b) in conjunction with § 1421(c).  *Hovsepian II*, 359 F.3d at 1162.  The court explained that because the latter provision allowed the court to undertake a de novo review on an application and make the final naturalization decision, no matter what CIS's findings were, then it would "[make] sense to interpret [§ 1447(b)] as giving district courts the last

10

word, too." *Id.* The court reasoned that having "the last word" under § 1447(b) meant that the court could exercise "exclusive jurisdiction over those naturalization applications on which [CIS] has failed to act in a timely fashion." *Id.*

Finally, the court in *Hovsepian II* stated that interpreting § 1447(b) to allow concurrent jurisdiction rather than exclusive jurisdiction would "undermine four main public policy objectives that Congress sought to further" by enacting the Immigration Act of 1990. 359 F.3d at 1163. The court stated that Congress intended to reduce the waiting time for naturalization applicants, streamline the process of applying and reduce the burdens on courts and CIS, address concerns with the consistency and fairness of naturalization decisions, and give naturalization applicants the power to choose which forum would adjudicate their applications. *Id.* at 1163-64. The court concluded that all of these aims would be frustrated by an interpretation that did not give the courts exclusive jurisdiction once an applicant filed a complaint.[4] *Id.*

The reasoning of this court in *Etape*, __ F.Supp.2d __, 2006 WL 2355079, the Fourth Circuit in *Kia*, 1999 WL 172818, the District of Minnesota in *Farah*, 2006 WL 1116526, and the Ninth Circuit panel decision in *Hovsepian I*, 307 F.3d 922, is simply more logical. The

---

[4] Several district courts have agreed with the reasoning in *Hovsepian II*. *See, e.g.*, *Zaranska*, 400 F.Supp.2d 500; *Castracani*, 377 F.Supp.2d 71; *Meraz v. Comfort*, No. 05-C-1094, 2006 WL 861859 (N.D.Ill. Mar. 9, 2006).

statutory language makes clear that the jurisdiction of the district court under § 1447(b) is premised on a naturalization application that has not yet been adjudicated by CIS.   Nothing in the statute strips CIS of its jurisdiction where more than 120 days has elapsed since a naturalization examination, CIS has not rendered a decision, and the applicant has filed a claim in district court pursuant to § 1447(b).

Additionally, the *Hovsepian* II court's reliance on *Brock* to dictate the conclusion that § 1447(b) is a jurisdiction-stripping statute is misplaced.   In *Brock*, the Supreme Court addressed a provision of the Comprehensive Employment and Training Act ("CETA"), which provided that the Secretary of Labor ("Secretary") "'shall' issue a final determination as to the misuse of CETA funds by a grant recipient within 120 days after receiving a complaint alleging such misuse."[5]   476 U.S. at 254-55.   The facts of the case indicated that the Secretary's final determination of misuse was made more than 120 days after an audit report was filed indicating a possible misuse of funds.   Despite the untimely decision, the Secretary ordered the grant recipient to repay the funds that were at issue.   The Court was called upon to determine whether the Secretary lost the power to recover misused funds after the expiration of the 120-day period.   *Id.* at 255.

---

[5] This statute was repealed in 1982 and replaced by the Job Training Partnership Act, 29 U.S.C. § 1501 *et seq.*, in October of the same year.

The Court considered the statutory language, legislative history, and relevant administrative regulations promulgated under the statute, and held that "CETA's requirement that the Secretary 'shall' take action within 120 days does not, standing alone, divest the Secretary of jurisdiction to act after that time." *Id.* at 266.  The Court explained:

> We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake.  When, as here, there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that Congress intended the agency to lose its power to act.

*Brock*, 476 U.S. at 260 (footnote omitted).  The Court clarified in a footnote that any complainant adversely affected by a failure to act under CETA could bring an action in district court to compel agency action under the Administrative Procedure Act.  *Id.* Bringing an action in a district court was, according to the Court, in fact, a "less drastic" remedy for failure to meet a statutory deadline than stripping the agency of its power, as a consequence of its failure to act within the statutory time frame.  *Id.*  The Court also distinguished between statutes of limitations established by Congress for filing complaints and time requirements for certain agency actions, stating that the provision in CETA:

> does not merely command the Secretary to file a complaint within a specified time, but requires him to resolve the entire dispute within that time.  This is a more substantial

13

> task than filing a complaint, and the
> Secretary's ability to complete it within 120
> days is subject to factors beyond his control.
> There is less reason, therefore, to believe
> that Congress intended such drastic
> consequences to follow from the Secretary's
> failure to meet the 120-day deadline.

*Id.* at 261.

In light of the Court's discussion in *Brock*, the fact that an applicant for naturalization has the option to pursue a claim in district court where CIS fails to make a determination within 120 days is not a sufficient indication that Congress intended to divest CIS of the power to make a determination on the application after a complaint is filed. Moreover, § 1447(b) specifically allows a court to remand the case back to CIS for a determination, providing further support that Congress did not intend to prohibit CIS from making a decision as a consequence of its failure to act within 120 days. Finally, like the agency action at issue in *Brock*, CIS's determination of a naturalization application may be highly involved, and the agency's ability to complete the process within 120 days may be subject to factors beyond its control. For example, CIS may need additional information regarding an applicant that is not readily available and that may delay the determination.

The Ninth Circuit also stated that, because § 1421(c) allowed the district court to make a final determination on a naturalization application after it had proceeded through the required stages of administrative review, the district court should

14

have the "last word" under § 1447(b) as well, meaning exclusive
jurisdiction.   The Ninth Circuit's interpretation, however, does
not comport with the rule of statutory construction that "where
Congress includes particular language in one section of a statute
but omits it in another provision of the same Act, it is generally
presumed that Congress acts intentionally and purposefully in the
disparate inclusion or exclusion." *Soliman v. Gonzales*, 419 F.3d
276, 283 (4th Cir. 2005) (quoting *Immigration & Naturalization Serv.
v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987)) (internal quotation
marks omitted).   Thus, it does not necessarily follow that having
the "final word" when reviewing a naturalization application under
one statutory provision means that the district court has a similar
scope of power under another provision, or that this "final word"
must translate into jurisdiction over the naturalization
application to the exclusion of CIS.

Moreover, contrary to the Ninth Circuit's analysis, allowing
CIS to make a decision while an applicant's complaint is pending
before a court actually helps further the proffered Congressional
aims.   If CIS decides a naturalization application prior to the
district court addressing the applicant's complaint, it would
thwart the aim of timeliness to make the applicant wait for a
judicial determination on the issue, especially when the court has
the option of simply remanding the case back to CIS to make the
same decision that already had been made while the applicant's

15

complaint was pending.   Instead, if there was an unfavorable administrative decision, the applicant immediately could begin the administrative appeal process and possibly reapply if unsuccessful. Moreover, CIS could grant a naturalization application while a complaint was pending, and an interpretation of § 1447(b) that divested CIS of jurisdiction would invalidate that action.   This outcome is counterintuitive and actually would result in harm to the applicant who presumably wants to be naturalized.[6]   Further, exclusive jurisdiction on the part of the district court generally is inefficient with regard to both the courts and CIS because of the likelihood of duplication of investigation and review. Finally, fairness and consistency would best be achieved when the agency charged with the expertise to make decisions on naturalization applications is handling the initial determination and subsequent administrative appeal.[7]

---

[6] There have been many cases in this district brought under § 1447(b) that have been dismissed as moot or voluntarily dismissed because of settlement, in which CIS approved a naturalization application after the case was initiated in this court, including: *Popov v. Caterisano*, AW 05-1983; *Deviatov v. Gonzales*, PJM 05-3433; *Deviatov v. Gonzales*, RDB 06-602; *Xie v. Gonzales*, AMD 06-1179; *Wang v. Gonzales*, PJM 06-1199; and *Lee v. Gonzales*, JFM 06-1326.

[7] The Ninth Circuit in *Hovsepian II* also states that concurrent jurisdiction would frustrate the goal of giving applicants the power to choose where their applications are adjudicated.   When the application remains without a decision after 120 days following an examination, applicants can choose to go to district court under § 1447(b).   An applicant's "choice" may be frustrated where the individual files a complaint pursuant to § 1447(b) and CIS makes a decision on the application while the
(continued...)

Plaintiff filed a complaint seeking relief pursuant to §
1447(b), when her naturalization application had been pending more
than 120 days after her examination.  At the time the complaint was
filed, this court had the discretion under § 1447(b) either to make
a determination on the application or to remand the application to
CIS.  Once CIS made a decision, however, Plaintiff's case became
moot, and this court was without jurisdiction over the claim.
Although Plaintiff has a right, pursuant to § 1421, to seek
judicial review of CIS's denial of her application, she first must
exhaust her administrative remedies.

Accordingly, Defendant's motion to dismiss will be granted.
A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

---

[7](...continued)
complaint is pending.  The possible frustration of this policy
interest alone, however, is not sufficient to compel the
interpretation of § 1447(b) proposed in *Hovsepian II*.